FILED

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

2017 FEB -6  PM 4: 20

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

| | |
|---|---|
| **KEVIN LOPEZ and MICHAEL BIONDI,** individually and on behalf of all others similarly situated, | Case No. : |
| | **CLASS ACTION COMPLAINT** |
| *Plaintiffs,* | **DEMAND FOR JURY TRIAL** |
| *v.* | 6:17- CV-209- ORL-28- TBS |
| **360 DIGITAL MARKETING LLC,** a Delaware limited liability company, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Michael Biondi ("Biondi" or "Plaintiff Biondi") and Plaintiff Kevin Lopez ("Lopez" or "Plaintiff Lopez") bring this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant 360 Digital Marketing LLC ("360 Digital") to stop Defendant's practice of sending unsolicited text messages to cellular telephones even after consumers request for such messages to stop and to obtain redress for all persons injured by its conduct. Plaintiff Biondi and Plaintiff Lopez, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.  Plaintiff Biondi and Plaintiff Lopez will be collectively referred to herein as "Plaintiffs."

## NATURE OF THE ACTION

1.      360 Digital, through itself and several affiliates,[1] purports to offer a digital

marketing service that includes logo and website design, web development, video

animation, corporate branding, SEO and analytics and writing consultancy.

2.      Unfortunately for consumers, 360 Digital casts its marketing net too wide.

That is, in an attempt to promote its business, 360 Digital conducted (and continues to

conduct) a wide-scale telemarketing campaign that features the sending of repeated

unsolicited text messages to consumers' cellular telephones—without consent, all in

violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

**A. Bulk SMS Marketing**

3.      In recent years, marketers who have felt stymied by federal laws limiting

solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative

technologies through which to send bulk messages cheaply.

4.      Bulk text messaging, or SMS marketing, has emerged as a new and direct

method of communicating and soliciting consumer business. The term "Short Message

Service" or "SMS" is a messaging system that allows cellular telephone subscribers to

use their cellular telephones to send and receive short text messages, usually limited to

160 characters. An SMS message is a text message call directed to a wireless device

through the use of the telephone number assigned to the device.

5.      When an SMS message call is successfully made, the recipient's cell

phone alerts him or her that a message has been received. As cellular telephones are

inherently mobile and are frequently carried on their owner's person, calls to cellular

---

[1] 360 Digital affiliates include, and are not limited to, Reckon Media LLC, Route 66
Designs, and 29Designs.

telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

**B.** **360 Digital Transmits Text Messages to Consumers Who Do Not Want Them**

6.      360 Digital, through itself and various affiliates, offers digital marketing services that includes logo and website design, web development, video animation, corporate branding, SEO and analytics, and writing consultancy.

7.      360 Digital sends text messages to consumer's cellular telephones in an attempt to solicit business.

8.      360 Digital sends text messages from "short code" 273-67. A short code is akin to a telephone number for text messages.

9.      360 Digital also sends text messages from telephone numbers 928-212-5037, 435-412-0181, 631-933-1148, 810-641-8025, 857-320-4347, 626-703-5500, 619-637-9563, and 978-705-4877.

10.      In sending these text messages, 360 Digital took no steps to acquire the oral or written prior express consent of Plaintiff Biondi, Plaintiff Lopez, or the Class Members who received the unsolicited text messages.

11.      360 Digital made, or had made on its behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

12.      In sending the text messages at issue in this Complaint, 360 Digital utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to

dial such numbers, *en masse,* in an automated fashion without human intervention. 360 Digital's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

13.     360 Digital was and is aware that text messages were and are being made without the prior express consent of the text message recipients.

### C. 360 Digital Transmits Text Messages to Consumers Who Have Expressly Opted-Out

14.     360 Digital sends unauthorized text messages to cellular subscribers who have expressly "opted-out" or requested not to receive text messages. But, even if any prior consent existed, 360 Digital is required to honor each stop-request as a termination of any prior consent. Accordingly, any SMS text message (other than a final one-time confirmation text message confirming the recipient's desire to not receive such messages) sent to a cellular subscriber after receiving an express stop request is done without prior express consent.

15.     To help mobile marketers navigate regulatory compliance, the Mobile Marketing Association ("MMA") publishes specific guidelines based on accepted industry practices for all mobile marketers. Those guidelines include industry best practices for processing and honoring stop requests from consumers.

16.     According to the MMA's October 2012 U.S. Consumer Best Practices for Messaging, "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program. . . END, CANCEL, UNSUBSCRIBE or QUIT should also be opt-out key words for all programs; however content providers should feature the word STOP in their advertising and

messaging. . . When sent, these words cancel the subscriber's previous opt-in for messaging." Further, "[t]he content provider must record and store all opt-out transactions."

17.   CTIA[2] similarly advises that standards for processing opt-out messages in shortcode programs:

> Functioning opt-out mechanisms are crucial for all text messaging programs. Programs must always acknowledge and respect customers' requests to opt out of programs
> …
> Short code programs must respond to, at a minimum, the universal keywords STOP, END, CANCEL, UNSUBSCRIBE, and QUIT by sending an opt-out message and, if the user is subscribed, by opting the user out of the program. Subsequent text, punctuation, capitalization, or some combination thereof must not interfere with opt-out keyword functionality.[3]

18.   CTIA additionally provides guidance on standards for notifying cellular telephone users about their ability to opt-out of text message programs:

> Recurring-messages programs must also display opt-out instructions at program opt-in and at regular intervals in content or service messages, at least once per month. Opt-out information must be displayed on the advertisement. A program may deliver one final message to confirm a user has opted out successfully, but no additional messages may be sent after the user indicates a desire to cancel a short code program.[4]

---

[2] The CTIA is an international non-profit organization that audits and enforces the rules surrounding carrier-based text messaging programs. Together, the MMA and the CTIA establish and publish guidelines setting forth accepted industry best practices for mobile marketing.

[3] *See,* CTIA's Short Code Monitoring Program, *Short Code Monitoring Handbook,* Version 1.6, effective July 16, 2016, page 4, available at https://www.usshortcodes.com/info/static/docs/CTIA%20Short%20Code%20Monitoring%20Handbook%20v1.5.2.pdf

[4] *Id.*

19.     Again, 360 Digital simply ignores these accepted industry guidelines. Instead, 360 Digital makes it difficult for consumers to opt-out or unsubscribe to its SMS text messages.

20.     Despite receiving numerous express stop requests from cellular subscribers, including Plaintiffs, 360 Digital continues to send automated text messages to these subscribers, sometimes for months or years afterwards.

21.     360 Digital knows, or is reckless in not knowing, that its SMS text messages to these cellular subscribers are unauthorized. Reply message stop requests are, by design, sent to 360 Digital's short code, thereby directly informing 360 Digital that any subsequent messages are unauthorized. Ultimately, consumers are forced to bear the costs of receiving these unsolicited and unauthorized text messages.

22.     Several consumers who have received unwanted text messages from 360 Digital have taken their complaints about 360 Digital online.

23.     As an illustrative example, and not one of limitation, the following complaints have been made by consumers online:

> "Today we received a text message from Route 66 Designs at 27367. It looks like the email spammers are now starting to use SMS platforms to send text spam now."[5]

> "Received an SMS spam from this clowns too. Spam message is here: "Congrats! You are Selected for Godaddy 70% Off Animated Video Deal Ending Today! Click here bit.ly/2bTRnnB Now to Activate this Deal & Boost your Sales by 300%." Do not click on their spam bit.ly link! It actually takes you to their spammy web site at: http://route66d.com/video/?Src=SMS26AugLast-BSG-Campaign[.] They do not post their physical street address with their spammy SMS so its in clear violation of the CAN SPAM ACT. I definitely read my message within 4 minutes. I also reported them to abuse@enom.com within 4

---

[5] http://www.seofindlay.com/text-spam/route-66-designs-text-spam/

minutes. So, one could say that their message definitely "converted". Their spammy domain was registered in May 2016"[6]

"Yep, just got one today from Route 66 Designs - they're spammers who can't be trusted . with your information."[7]

"I clicked through. Took me to route66d.com"[8]

"I get this on nearly a daily basis. Godaddy should try and sue those behind it."[9]

"I get the same text message 3x per week"[10]

"Obviously it was not sent by Godaddy. I get these about 3 times a week. They use your whois information and will sms from different numbers. I have tried to block them but they get a new bumber [sic] each times!"[11]

"I have gotten 5 of these in the last 24 hours. So annoying!!!"[12]

24.     Indeed, GoDaddy, a website domain provider and host has vehemently denied sending these unwanted and harassing text messages.

25.     Nicole Cox, Vice President of Customer Engagement at GoDaddy, commented on a thread:

"GoDaddy has no relationship with the group that is sending these messages. GoDaddy does not condone sending of text messages to customers that have not explicitly consented to receive them"[13]

26.     Upon information and belief, and via investigation by Plaintiffs' attorneys, each of the text messages sent to Plaintiffs and the Classes are affiliated with 360 Digital.

---

[6] *Id.*

[7] *Id.*

[8] http://www.domaininvesting.com/godaddy-comments-about-text-message-spam/#comments

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

27.     By sending the text messages at issue in this Complaint, 360 Digital caused Plaintiffs and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their carriers for the receipt of such text messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

28.     In response to 360 Digital's unlawful conduct, Plaintiffs filed this action seeking an injunction requiring 360 Digital to cease all unsolicited text messaging activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

29.     Plaintiff Michael Biondi is a natural person and resident of Belleville, New Jersey.

30.     Plaintiff Kevin Lopez is a natural person and resident of Orlando, Florida.

31.     Defendant 360 Digital is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 16192 Coastal Highway, Lewes, Delaware 19958.

**JURISDICTION AND VENUE**

32.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over 360 Digital because it conducts a significant amount of business in this District, solicits consumers in this District, made and continues to make

unsolicited text message calls in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

33.     Venue is proper in this District under 28 U.S.C. § 1391(b) because 360 Digital conducts a significant amount of business within this District and markets to this District, and because the wrongful conduct giving rise to this case occurred in and/or was directed to this District. Venue is additionally proper because Plaintiff Lopez resides in this District.

## COMMON FACTUAL ALLEGATIONS

34.     360 Digital is a digital marketing service that includes logo and website design, web development, video animation, corporate branding, SEO and analytics, and writing consultancy.

35.     In recent years, companies such as 360 Digital have turned to unsolicited telemarketing as a way to increase its customer base. Widespread telemarketing, often through third parties such as 360 Digital's affiliates is a major method by which 360 Digital recruits new customers.

36.     At all times material to this Complaint 360 Digital was and is fully aware that unsolicited telemarketing calls are being made to consumers' cellular telephones through their own efforts and their agents.

37.     360 Digital, through various affiliates, knowingly made (and continues to make) unsolicited telemarketing text messages without the prior express consent of the recipients and knowingly continued to text message them after requests to stop. In so doing, 360 Digital not only invaded the personal privacy of Plaintiffs and members of the putative Classes, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF MICHAEL BIONDI

38.     Plaintiff Biondi is the owner/possessor of a cellular telephone number ending in -4050 and has been for a considerable amount of time.

39.     Beginning on or around July of 2016, Biondi began receiving unsolicited text messages on his cellular telephone from the short code and telephone numbers mentioned above, which are all associated with 360 Digital.

40.     On July 19, 2016 at 12:41 p.m., Biondi received a text message from 360 Digital stating, "2 Hours Left to Activate your Godaddy Special Custom Logo Coupon! Click here http://goo.gl/aRDyk2 to Activate Your Coupon Now & Get Your Logo for Only $29.96." This text message was sent from short code 273-67. The hyperlink in the July 19, 2016 text message, http://goo.gl/aRDyk2, pointed to http://route66d.com, which was a website owned and/or controlled by 360 Digital.

41.     On August 2, 2016 at 12:46 p.m., Biondi received another text from 360 Digital stating, "2 Hours Left to Activate your Godaddy Special Custom Logo Coupon! Click here http://goo.gl/aRDyK2 to Activate Your Coupon Now & Get Your Logo for Only 29.96." This message was also sent from short code 273-67. The hyperlink in the August 2, 2016 text message, http://goo.go/aRDyk2, pointed to http://route66d.com, which was a website owned and/or controlled by 360 Digital.

42.     On August 9, 2016 at 2:24 p.m., Biondi received another text from 360 Digital stating, "2 Hours Left to Activate your Godaddy Special Custom Logo Coupon! Click here http://goo.gl/aRDyK2 to Activate Your Coupon Now & Get Your Logo for Only $29.96." This message was sent from short code 273-67. The hyperlink in the August 9, 2016 text message, http://goo.go/aRDyk2, pointed to http://route66d.com,

which was a website owned and/or controlled by 360 Digital. A screenshot of the July 19, 2016, August 2, 2016, and August 9, 2016 text messages is reproduced below:



43.     On August 22, 2016 at 3:55 p.m., Biondi received another text from 360 Digital stating, "MarioGiovatto, Last Day to Activate Godaddy 70% Off Animated Video Deal. Click here http://goo.gl/pglDZG to Activate your Deal Now & Boost your sales by 300%." This message was sent from telephone number 928-212-5037. The hyperlink in the August 22, 2016 text message, http://goo.gl/pglDZG, pointed to http://route66d.com, which was a website owned and/or controlled by 360 Digital. A screenshot of the August 22, 2016 text message is reproduced below:



44.     On September 2, 2016 at 2:08 p.m., Biondi received another text from 360

Digital stating, "Congrats! You are Selected for Godaddy 70% Off Animated Video Deal

Ending Today! Click Here bit.ly/2bZYY6m Now to Activate this Deal & Boost your

Sales by 300%. This message was sent from telephone number 435-412-0181. The

hyperlink in the September 2, 2016 text message, bit.ly/2bZYY6m, pointed to

http://theamericandesigns.com/cgi-sys/suspendedpage.cgi?Src=SMS02Sep-BSG-

Campaign, which was a website owned and/or controlled by Digital 360. A screenshot of

the September 2, 2016 text message is reproduced below:



45.     On September 12, 2016 at 4:10 p.m., Biondi received another text from

360 Digital stating, "Congrats! You are Selected for 70% Off Godaddy Business Video

Deal Ending Today! Click Here bit.ly/2c4AmUR Now & Activate this Deal to Boost

your Sales by 300%." This message was sent from telephone number 810-641-8025. The

hyperlink in the September 12, 2016 text message, bit.ly/2c4AmUR, pointed to

http://route66Designz.mp4?dl=0, which was a website owned and operated by 360

Digital. A screenshot of the September 12, 2016 text message is reproduced below:



46.     Biondi replied, "Stop" and did not receive a confirmation text message

that his stop request was received and would be honored by 360 Digital.

47.     Despite Biondi's stop request, on September 21, 2016 at 1:23 p.m. Biondi

received yet another unsolicited text message from 360 Digital, stating, "Your Godaddy

$29.96 Custom Logo Coupon will expire today. Click here bit.ly/2cD6Arv Now to

Activate this Coupon & Get Logo for $29.96. Stop-End." The hyperlink in the September

21, 2016 text message, bit.ly/2cD6Ary, pointed to

http://milliondo!lard.com/Ip6/?/21/9/16-GD-Src=BSG=SMS-Campaign, which was a

website owned and/or controlled by Digital 360. This text message was sent from

telephone number 857-320-4347. A screenshot of the September 21, 2016 text message is

reproduced below:



48.     Again, Biondi replied "Stop-End" and did not receive a confirmation text message that his stop request was received and would be honored by 360 Digital.

### FACTS SPECIFIC TO PLAINTIFF KEVIN LOPEZ

49.     Plaintiff Lopez is the owner/possessor of a cellular telephone number ending in -0154.

50.     Similarly to Plaintiff Biondi, beginning on or around November of 2016, Lopez began receiving unsolicited text messages on his cellular telephone from telephone numbers 619-637-9563 and 978-705-4877, which are both associated with 360 Digital.

51.     On December 23, 2016 at 10:20 a.m., Lopez received a text message from 360 Digital stating, "Give Your Sales 1000% Boost with Animated Video.  Click Here bit.ly/2hg87Z7 Now to Activate 70% Off Animated Video Deal & Boost Your Sales by 1000%." This text message was sent from telephone number 619-637-9563.  The hyperlink in the December 23, 2016 text message, bit.ly/2hg87Z7, pointed to

www.route66dsyns.com, which was a website owned and/or controlled by 360 Digital. A

screenshot of the December 23, 2016 text message is reproduced below:





52.     On January 26, 2017 at 6:13 p.m., Lopez received another text from 360

Digital stating, "Urgent Last 2-Hrs! Special 70% Off Business Animated Video Deal.

Click Here bit.ly/2jCMmS7 to Activate & Boost your Sales by 1000%. Hurry Only 9

Slots Left." This message was sent from 978-705-4877. The hyperlink in the January 26,

2017 text message, bit.ly/2jCMmS7, pointed to http://29designx.com, which was a

website owned and/or controlled by 360 Digital.





53.     On several occasions, including when the text messages from 360 Digital began, Plaintiff Lopez replied back to the unwanted text messages demanding that it stops sending text messages to him.

54.     Neither Plaintiff Biondi nor Plaintiff Lopez have a relationship with 360 Digital, have never provided their telephone numbers directly to 360 Digital, or requested that 360 Digital place calls and/or text messages to them or offer them its services. Simply put, Plaintiffs have never provided their prior express consent to 360 Digital to place calls to them and have no business relationship with 360 Digital.

55.     By making unauthorized text message calls as alleged herein, 360 Digital has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Plaintiffs' use and enjoyment of their cellular telephones, in addition to the wear and tear on the cellular telephone's hardware (including the cellular telephone's battery) and the consumption of memory on their

cellular telephones. In the present case, a consumer could be subjected to many unsolicited text messages as 360 Digital does not provide instructions or a mechanism to opt out, or simply ignores opt out requests that it receives.

56.     In order to redress these injuries, Plaintiffs, on behalf of themselves and the Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited voice and text calls to cellular telephones.

57.     On behalf of the Classes, Plaintiffs seek an injunction requiring 360 Digital to cease all wireless spam activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

58.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seek certification of the following two Classes:

> **Autodialed No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendant (or a third person acting on behalf of Defendant) sent text messages, (2) to the person's cellular telephone number, and (3) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to send automated text messages to the Plaintiff.

> **Autodialed Stop Call Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendant (or a third person acting on behalf of Defendant) sent text messages, (2) on the person's cellular telephone number, and (3) for the purpose of promoting a business or service, (4) after the person informed Defendant to stop sending them text messages.

18

59.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) 360 Digital, its subsidiaries, parents, successors, predecessors, and any entity in which 360 Digital or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against 360 Digital have been fully and finally adjudicated and/or released. Plaintiffs anticipate the need to amend the Class definitions following appropriate discovery.

60.     **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, 360 Digital sent autodialed text messages to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through 360 Digital's records.

61.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether 360 Digital's conduct constitutes a violation of the TCPA;

(b) whether 360 Digital utilized an automatic telephone dialing system to send text messages to members of the Classes;

(c) whether members of the Classes are entitled to statutory and treble damages based on the willfulness of 360 Digital's conduct;;

(d) whether 360 Digital obtained prior express written consent to contact any class members; and

(e) whether 360 Digital continued to send text messages after consumers communicated an opt-out.

62. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiffs have no interests antagonistic to those of the Classes, and 360 Digital has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Classes.

63. **Appropriateness**: This class action is also appropriate for certification because 360 Digital has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. 360 Digital's business practices apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinges on 360 Digital's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by 360 Digital's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from 360 Digital's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a

single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiffs the Autodialed No Consent Class)

64.     Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

65.     360 Digital sent autodialed text messages to cellular telephone numbers belonging to Plaintiffs and other members of the Autodialed No Consent Class without first obtaining prior express consent to receive such autodialed text messages.

66.     360 Digital sent the text autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by 360 Digital, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. 360 Digital's autodialer disseminated information *en masse* to Plaintiffs and other consumers.

67.     By sending the unsolicited text messages to Plaintiffs and the cellular telephones of members of the Autodialed No Consent Class without their prior express consent, and by utilizing an automatic telephone dialing system to make those calls, 360 Digital violated 47 U.S.C. § 227(b)(1)(A)(iii).

68.     360 Digital has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of 360 Digital's conduct, Plaintiffs and the other members of the Autodialed No

Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

69.     In the event that the Court determines that 360 Digital's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Autodialed No Consent Class.

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiffs and the Autodialed Stop Call Class)

70.     Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

71.     360 Digital and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiffs and the other members of the Autodialed Stop Call Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

72.     The telephone dialing equipment utilized by 360 Digital and/or its agents, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

73.     These text messages were made *en masse* and without the consent of the Plaintiffs and the other members of the Autodialed Stop Call Class to receive such wireless spam. Indeed, consent had been revoked by everyone since they each had

responded with the common SMS codes to opt-out of further communications, such as "STOP," "REMOVE," "OPT OUT." or "CANCEL."

74. Plaintiffs and members of the Autodialed Stop Call Class expressly requested that 360 Digital no longer sends text messages to them, after which 360 Digital failed to place Plaintiffs and members of the Autodialed Stop Call Class on 360 Digital's internal do-not-call list (or failed to do so within a reasonable time period).

75. The text messages to Plaintiffs and the Autodialed Stop Call Class were made after any consent had been expressly revoked by responding with an opt-out request, such as "STOP." This alone violates the TCPA.

76. Additionally, 360 Digital's supposed opt out mechanism isn't cost free. Among other things, it requires the transmission of data from the user's cellular telephone that results in a reduction of the user's allowable data.

77. Based on such conduct, 360 Digital has violated 47 U.S.C. § 227(b)(1)(A)(iii).

78. 360 Digital violated 47 C.F.R. § 64.1200 (d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiffs and the Autodialed Stop Call Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

79. As a result of such conduct, Plaintiffs and the other members of the Autodialed Stop Call Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

80.     In the event that the Court determines that 360 Digital's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Autodialed Stop Call Class.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Michael Biondi and Kevin Lopez, individually and on behalf of the Classes, pray for the following relief:

1.      An order certifying the Classes as defined above, appointing Plaintiffs Michael Biondi and Kevin Lopez as the representatives of the Classes, and appointing his counsel as Class Counsel;

2.      An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

3.      An order declaring that 360 Digital's actions, as set out above, violate the TCPA;

4.      A declaratory judgment that 360 Digital's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

5.      An order requiring 360 Digital to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

6.      An order requiring 360 Digital to identify any third-party involved in the autodialed calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

24

7.      An injunction requiring 360 Digital to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Classes;

8.      An injunction prohibiting 360 Digital from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

9.      An injunction prohibiting 360 Digital from contracting with any third-party for marketing purposes until they establish and implement policies and procedures for ensuring the third-party's compliance with the TCPA;

10.     An injunction prohibiting 360 Digital from conducting any future telemarketing activities until they have established an internal Do Not Call List as required by the TCPA;

11.     An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

12.     Such other and further relief that the Court deems reasonable and just.

///

///

///

///

///

///

///

///

///

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**KEVIN LOPEZ and MICHAEL BIONDI**, individually and on behalf of Classes of similarly situated individuals

Dated: February 2, 2017

By:   /s/Stefan Coleman
One of Plaintiff's Attorneys

Stefan Coleman (Florida Bar No. 0030188)
law@stefancoleman.com
Blake J. Dugger*
blake@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd., 28th floor
Miami, Florida 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Attorney for Plaintiffs and the Classes

*pro hac vice pending

26